Larry STRADLEY, Plaintiff,

v.

Richard R. ANDERSEN, as Chief of the Division of Police, Department of Public Safety, City of Omaha, Nebraska, Defendant.

Civ. No. 71–L–228.

United States District Court,
D. Nebraska.

June 15, 1971.

———◆———

Bruce Mason, Stanley A. Krieger, and Bennett G. Hornstein, Omaha, Neb., for plaintiff.

James E. Fellows, and Kent N. Whinnery, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

This case comes before the Court on application of the plaintiff that a permanent injunction issue restraining enforcement of an order promulgated by Chief Richard R. Andersen of the City of Omaha Police Division, and a motion by defendant that such action be dismissed [Filings # 1, 3].

The plaintiff, Larry Stradley, has been a police officer for approximately four and one-half years. The order in question was issued by Chief Andersen on May 17, 1971, and provided for "Standards of Appearance for Police Officers," in regard to length of hair, sideburns, mustaches, and goatees or beards. The order was to be effective June 1, 1971. On May 28, 1971, this Court issued a temporary restraining order, restraining enforcement of the order of Chief Andersen until a hearing on the matter could be held on June 2, 1971.

The Court, having studied the briefs of the parties and listened to the evidence each party chose to present to the Court at such hearing, sustains defendant's motion to dismiss.

The Court finds, pursuant to the evidence which was presented and uncontroverted, that in this municipality city employees, including the police, are allowed to form unions and to negotiate the conditions of their employment. Under that contract there is provided an appeal process whereby any order of the Chief of Police may be appealed in the following order: First, to the Chief himself, then to the Public Safety Director for the City of Omaha, then to the City Personnel Director, and then to the City Personnel Board. In addition, an action can be then filed in the Court of Industrial Relations, and the District Courts of Douglas County.

This Court believes in the dual sovereignty theory of government in which the State courts have an obligation to handle personnel problems arising within their jurisdiction. Mr. Chief Justice Warren E. Burger emphasized the need for a renewed application of this concept in his "State of the Federal Judiciary" message, delivered before the American Bar Association, at St. Louis, Missouri, on August 10, 1970. The Chief Justice said:

> "People speak glibly of putting all the problems of pollution, of crowded cities, of consumer class actions and others in the federal courts. We should look more to state courts familiar with local conditions and local problems." Alberda v. Noell, 322 F.Supp. 1379, 1382 [E.D.Mich.1971].

Although plaintiff sets out in his brief that under the Civil Rights Act plaintiff can go direct to the Federal Courts without attempting his state remedies, this Court feels that such is an overbroad statement of the law. Recently, in a series of decisions including Younger v. Harris, 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 [1971], the Supreme Court reversed that trend, at least so far as to Federal Courts in restraining state criminal prosecutions, Mr. Justice Black delivered the opinion of the Court, which reversed the lower court decision saying:

> The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but . . . [a] vital consideration [is], the notion of "comity", that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

Additionally, this Court believes that Chief Andersen should be able to issue appropriate orders without fear that the Federal Courts will be used to restrain enforcement of those orders prior to the completion of at least the administrative

appeal process. As the court stated in *Alberda*, supra, 322 F.Supp. at 1383, "Few public interests have a higher claim upon the discretion of a federal court than the avoidance of needless friction with state policies."

The Court wants to make it clear that it is not passing on the merits of the complaint. The Court is saying that under these facts, where *no* attempt has been made by plaintiff to pursue his State afforded administrative remedies, the federal court should not enjoin enforcement of an administrative order that may, on proper appeal, be reversed.