Stephen **BISHOP**, a Minor, et al.,
Appellants,

v.

Frank **COLAW** et al., Appellees.

No. 20588.

United States Court of Appeals,
Eighth Circuit.

Oct. 27, 1971.

On Suggestion for Rehearing En Banc
Dec. 6, 1971.

Aldrich, Circuit Judge, concurred and filed an opinion and Lay, Circuit Judge, concurred and filed opinion.

Michael D. Dunlop, St. Louis, Mo., for appellants.

J. William Newbold, Clayton, Mo., for appellees.

Before ALDRICH,* LAY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

The school administration of St. Charles, Missouri, a suburb of St. Louis, Missouri, in March 1970, suspended fifteen year old Stephen Bishop from school attendance solely because his hairstyle violated provisions of the school dress code. Stephen and his parents brought this action seeking to obtain his readmission, and a declaratory judgment overturning the dress code regulations governing the hair length and style of male students. Plaintiffs assert that these regulations violate Stephen's, and his parents', personal rights guaranteed by the United States Constitution. Plaintiffs base jurisdiction upon 42 U.S.C. § 1983 and upon 28 U.S.C. § 1343. After the district court denied the Bishops any relief, they brought this timely appeal. We have reviewed the record and reverse the district court for the reasons stated below.[1]

The St. Charles high school administration incorporated the hair-length regulations into a dress code during the 1969–70 school year. The pertinent regulations in effect at the time of Stephen's expulsion provided as follows:

Section 4. HAIR:

A. All hair is to be worn clean, neatly trimmed around the ears and back of the neck, and no longer than

---

* Of the First Circuit, sitting by designation.

1. The district court opinion is reported at 316 F.Supp. 455 (E.D.Mo.1970).

the top of the collar on a regular dress or sport shirt when standing erect. The eyebrows must be visible, and no part of the ear can be covered. The hair can be in a block cut.

B. The maximum length for sideburns shall be to the bottom of the ear lobe.

A few days after school opened in September 1969, the physical education teacher objected to Stephen's hairstyle because it was not tapered in the back and above the ears as was then required by the existing regulations. Following several conferences involving Stephen, his parents, the principal, and the assistant principal, Stephen's hair was trimmed to conform to the regulations. In November, the same teacher protested the length of Stephen's hair, and following additional conferences with the administration, Stephen again cut his hair. In January 1970, after the hair-length regulations had been modified to allow for a block cut, Stephen's mathematics teacher complained that Stephen's hair was too long in the back and over the ears. In response, Stephen trimmed his hair in back, and after additional conferences between the assistant principal and Stephen's father, Stephen's hair was made to comply with the regulations by also trimming it over the ears. Finally, in February 1970, Stephen and his parents refused to acquiesce in the further demands of the school administration that Stephen's hair be trimmed again. Stephen was suspended a few days later,[2] and the instant litigation followed.

In recent years, the federal courts have found themselves increasingly embroiled in hair-length controversies resulting from the enforcement of regulations similar to that promulgated by the school administration of St. Charles High

School. The Supreme Court has, on several occasions, refused to review the constitutional questions raised in this area. E. g., Jackson v. Dorrier, 424 F. 2d 213 (6th Cir.), cert. denied, 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed. 88 (1970) (upholding regulation); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970) (holding regulation unconstitutional); Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968) (upholding regulation). What little guidance we have from the Court in this area is conflicting. Justice Black, writing as Circuit Justice in Karr v. Schmidt, 401 U.S. 1201, 91 S.Ct. 592, 27 L.Ed.2d 797 (1971), took the position that state regulation of matters such as hair length raises no issue of constitutional dimensions calling for review by federal courts. On the other hand, Justice Douglas, dissenting from a denial of certiorari, argued that state regulation of hair length raises a serious equal protection question. Ferrell v. Dallas Independent School District, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968), denying cert. to 392 F.2d 697 (5th Cir. 1968). In addition, several courts of appeals have considered the validity of hair regulations similar to those presented here against a broad range of constitutional attacks.

The Seventh Circuit has ruled in favor of the students, holding that a student's right to govern the style and length of his hair is a personal freedom protected under the Ninth Amendment and the Due Process Clause of the Fourteenth Amendment. Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970); [3] Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L. Ed.2d 268 (1970). Under that circuit's

2. The issue also came before the school board, which directed the continued enforcement of the dress code, and sustained Stephen's suspension. The trial court issued a protective order, with the consent of the parties, permitting Stephens to continue in school pending a final determination of this case.

3. In *Crews, supra*, the court further held that to deny male students the opportunity to obtain a public education on the basis of their hair length would be violative of equal protection. 432 F.2d at 1266.

decisions, the state carries a "substantial burden of justification" for regulations which infringe upon this freedom. Crews v. Cloncs, supra, 432 F.2d at 1264 (quoting Griswold v. Connecticut, 381 U.S. 479, 503, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). (White, J., concurring)).

The First Circuit has also concluded that students possess a constitutional right to wear their hair as they choose. Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970). The First Circuit's approach differed slightly, however, from that of the Seventh Circuit. In *Richards,* the court found that the right of students to determine their personal appearance is "implicit in the 'liberty' assurance of the Due Process Clause." *Id.* at 1284. The court said:

> We do not say that the governance of the length and style of one's hair is necessarily so fundamental as those substantive rights already found implicit in the "liberty" assurance of the Due Process Clause, requiring a "compelling" showing by the state before it may be impaired. Yet "liberty" seems to us an incomplete protection if it encompasses only the right to do momentous acts, leaving the state free to interfere with those personal aspects of our lives which have no direct bearing on the ability of others to enjoy their liberty. * * *

> We think the Founding Fathers understood themselves to have limited the government's power to intrude into this sphere of personal liberty, by reserving some powers to the people. The debate concerning the First Amendment is illuminating. The specification of the right of assembly was deemed mere surplusage by some, on the grounds that the government had no more power to restrict assembly than it did to tell a man to wear a hat or when to get up in the morning. The response by Page of Virginia pointed

out that even those "trivial" rights had been known to have been impaired —to the Colonists' consternation—but that the right of assembly ought to be specified since it was so basic to other rights. The Founding Fathers wrote an amendment for speech and assembly; even they did not deem it necessary to write an amendment for personal appearance. We conclude that within the commodious concept of liberty, embracing freedoms great and small, is the right to wear one's hair as he wishes.

*Id.* at 1284–1285 (footnotes omitted). The court went on to note that, although this right is not a "fundamental" freedom which can be impaired only by showing a compelling state interest, the burden of justifying restrictions on this freedom still rests with the state.

The Fifth, Sixth, and Ninth Circuits[4] have sustained school codes regulating hair. Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968); Gfell v. Rickelman, 441 F.2d 444 (6th Cir. 1971); Jackson v. Dorrier, 424 F.2d 213 (6th Cir.), cert. denied, 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88 (1970); King v. Saddleback Junior College District, 445 F.2d 932 (9th Cir. 1971). Each has adopted a different approach in sustaining these regulations.

In *King, supra,* 445 F.2d at 940, the Ninth Circuit held that students have no "substantial constitutional right" to wear their hair as they desire. As a consequence, school authorities need not present proof of actual classroom disruptions to support hair regulations. Mere opinion evidence of teachers or school administrators that long hair interferes with the educational process will suffice.

The Sixth Circuit, although not recognizing a specific constitutional right to determine one's hair length and style, requires proof that the appearance of

---

4. In a very recent decision, the Tenth Circuit has rejected an attack upon school hair regulations on jurisdictional grounds.

Freeman v. Flake, 448 F.2d 258 (10th Cir., 1971).

the students caused classroom or other school disruptions. Implicit in these decisions is a recognition of the principle that the state has the burden of establishing the reasonableness of its regulations. *See Gfell, supra,* 441 F.2d 444; *Jackson, supra,* 424 F.2d 213.

The Fifth Circuit's decisions have turned on the reasonableness and necessity of the regulations. In *Ferrell, supra,* 392 F.2d 697, the court, while recognizing the right of students to govern their personal appearance, held that this right was not unreasonably infringed because the school board was able to demonstrate a need for the regulations to control disruptions attributable to controversies over student hair lengths which departed from the more conventional styles. The court carefully distinguished a district court decision [5] which had struck down a similar regulation because "[n]o suggestion was made that such [hairstyles] had any effect upon the health, discipline, or decorum of the institution." 392 F.2d at 703.

In a subsequent decision, another panel of the Fifth Circuit did not hesitate to strike down a regulation restricting the style, rather than the length, of hair. Griffin v. Tatum, 425 F.2d 201 (5th Cir. 1970). Later, in Stevenson v. Board of Education of Wheeler County, Georgia, 426 F.2d 1154 (5th Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970), the court made clear that "[t]he touchstone for sustaining such regulations is the demonstration that they are necessary to alleviate interference with the educational process." *Id.* at 1158 (quoting *Griffin, supra,* 425 F. 2d at 203).

Federal district courts generally, as well as those of this circuit, have disagreed about the validity of hair-length regulations.[6] Aside from the instant case, two district courts in this circuit have upheld hair regulations against con-

stitutional challenges. Carter v. Hodges, 317 F.Supp. 89 (W.D.Ark.1970); Giangreco v. Center School District, 313 F. Supp. 776 (W.D.Mo.1969). In both cases, however, the courts proceeded from the premise that the state carries the burden of demonstrating the reasonableness of the regulation. And, in both cases, the courts found that the students' appearance had, in fact, caused school disruptions.

The other district courts of this circuit which have considered the issue have followed the rationale of the First and Seventh Circuits in holding that students possess a constitutionally protected right to govern their personal appearance, and that the state must justify any infringement of this right. Parker v. Fry, 323 F.Supp. 728 (E.D.Ark.1971); Turley v. Adel Community School District, 322 F.Supp. 402 (S.D.Iowa 1971); Westley v. Rossi, 305 F.Supp. 706 (D. Minn.1969); *cf.* Sims v. Colfax Community School District, 307 F.Supp. 485 (S.D.Iowa 1970) (hairstyle of female students). In a comment typical of those made by other district judges of this circuit in rejecting the validity of hair regulations, Judge Eisele, in *Fry, supra,* said:

> The sincerity of the [school administrators] is not in doubt. The Court believes that the "hair" rule was adopted because of the conviction of school authorities that to permit extreme hair styles would result in disruption or distraction in the classrooms.
>
> \* \* \* But the facts do not appear to sustain the fear. Generally this fear is based upon the idea as stated by Mr. Swift, the superintendent, that anything out of the ordinary attracts attention and therefore could be disruptive of the educational process. This appears, however, to be more of an educational philosophy than an established scientific fact. Students in our

5. Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala.1967).

6. The district courts outside of this circuit which have considered the hair issue

have adopted a wide variety of approaches. A discussion of these approaches would unduly lengthen this opinion. These cases are collected in 84 Harv.L.Rev. 1702, 1703 n. 4 (1971); 55 Iowa L.Rev. 707 (1970).

high schools and colleges must have some room within which to express their individual personalities. [323 F. Supp. at 737]

With this background, we turn to the arguments advanced by appellants in this case. The Bishops assert that the regulations violate: 1) Stephen's First Amendment right to "symbolic expression"; 2) his Fourteenth Amendment right to equal protection; 3) his Ninth and Fourteenth Amendment rights to govern his personal appearance; and 4) his parents' Ninth and Fourteenth Amendment rights to govern the raising of their family.

### First Amendment

■■■■ We deem the First Amendment contention to be without merit in the context of this case, since the record contains no evidence suggesting that Stephen's hairstyle represented a symbolic expression of any kind. The appellants concede that Stephen never considered his hairstyle to be symbolic of any idea. They argue, however, that a "[nonconforming hairstyle] need not symbolize anything at all * * * to be a constitutionally protected expression." We cannot accept this unusually broad reading of the First Amendment. Since all conduct cannot be labeled speech even when "the [actor] intends thereby to express an idea," United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968), certainly conduct not intended to express an idea cannot be afforded protection as speech.

### Equal Protection

Dissenting in Ferrell, supra, 392 F.2d at 705–706, Judge Tuttle propounded an equal protection argument which Justice Douglas subsequently reiterated in dissenting from the Supreme Court's denial of certiorari. Justice Douglas said:

It comes as a surprise that in a country where the States are restrained by an Equal Protection Clause, a person can be denied education in a public school because of the length of his hair. I suppose that a nation bent on turning out robots might insist that every male have a crew cut and every female wear pigtails. But the ideas of "life, liberty, and the pursuit of happiness," expressed in the Declaration of Independence, later found specific definition in the Constitution itself, including of course freedom of expression and a wide zone of privacy. I had supposed those guarantees permitted idiosyncrasies to flourish, especially when they concern the image of one's personality and his philosophy toward government and his fellow men. [393 U.S. 856, 89 S.Ct. 98.]

The equal protection theory has been adopted in one circuit court decision. In Crews, supra, 432 F.2d at 1266, the Seventh Circuit found that male students were denied equal protection since females, who participated in substantially the same school activities as males, were not subject to the same hairstyle restrictions. Appellants have raised no question of sex discrimination. Their argument, cast as it is in terms of discrimination between males with differing hairlengths, does not fall within traditional concepts of invidious discrimination subject to the proscription of the Equal Protection Clause. Since we find in favor of appellants on other grounds, we do not pass upon this equal protection argument.

### Parents' Rights

Stephen's parents argue that the regulations violate their constitutional right to govern the raising of their family. The thrust of their argument is that, although school authorities are vested with certain powers to maintain discipline, some room must be left for the exercise of parental control over a child's lifestyle.[7] They assert that the Fourteenth

---

7. Although the Bishops stated that they imposed certain restrictions upon their son's choice of hairstyle, they considered the hair regulations of the school administration to be outdated.

Amendment forbids state intrusion, such as that attempted here, into the parent-child relationship. While there may be some merit to this assertion, we believe that this case is an inappropriate vehicle for making that determination. There is no indication in the record that Stephen's parents were responsible for his choice of hairstyle. Their role throughout has been limited to supporting Stephen's right to govern his personal appearance. The record, therefore, fails to establish any direct invasion of the parents' rights. We believe such a showing necessary to support a successful attack upon the regulations in question.

### Stephen's Rights

■ We hold that Stephen possessed a constitutionally protected right to govern his personal appearance while attending public high school. In reaching this conclusion we find it necessary to determine the nature and source of this right. Among those courts which agree that this right exists, there is some disagreement as to its nature and source. *Compare* Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970), *with* Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970), *and* Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970), *and* Westley v. Rossi, 305 F.Supp. 706 (D.Minn.1969). Some have referred to the right as "fundamental," others as "substantial," others as "basic," and still others as simply a "right." The source of this right has been found within the Ninth Amendment, the Due Process Clause of the Fourteenth Amendment, and the privacy penumbra of the Bill of Rights. A close reading of these cases reveals, however, that the differences in approach are more semantic than real. The common theme underlying decisions striking down hairstyle regulations is that the Constitution guarantees rights other than those specifically enumerated, and that the right to govern one's personal appearance is one of those guaranteed rights.

The existence of rights other than those specifically enumerated in the Constitution was recognized by the Supreme Court in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Much of the present divergence of opinion as to the source of the right asserted here can be traced to the different approaches adopted by the Justices in *Griswold*. We see no point in rehashing these different approaches, since under any one of them, the conclusion follows that certain additional rights exist.

■ We believe that, among those rights retained by the people under our constitutional form of government, is the freedom to govern one's personal appearance. As a freedom which ranks high on the spectrum of our societal values, it commands the protection of the Fourteenth Amendment Due Process Clause. *See* Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970); Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970). The importance attached to such personal freedom has been long recognized. Writing in 1891, Justice Gray said:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, "The right to one's person may be said to be a right of complete immunity: to be let alone." [Union Pacific Railway Company v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891)]

■■ Our determination that Stephen possesses this personal freedom, however, does not end our inquiry into the constitutionality of the challenged regulations. Personal freedoms are not absolute; they must yield when they intrude upon the freedoms of others. Our task, therefore, is to weigh the competing interests asserted here. In doing so, we proceed from the premise that the school administration carries the burden of establishing the necessity of infringing upon Stephen's freedom in order to carry out the educational mission of the

St. Charles High School. *See* Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970). Since our decision must turn on the necessity of the regulations, we review the evidence adduced in their support.

The record discloses that the St. Charles high school administrators believed that the wearing of long hair caused disruption in the educational process. They asserted that the male students with long hair tended to be rowdy, created a sanitation problem in the swimming pool, caused a safety problem in certain shop classes, and tended to make poorer grades than those with shorter hair.

Mr. Lauer, the principal, testified that a group of about twenty-five boys and girls, who opposed the dress code, generally congregated at one table in the school cafeteria. According to Mr. Lauer, this group has been noisy and boisterous, and, on one occasion, disrespectful to a teacher. The boys in this group apparently wear their hair longer than most others in the school.

The principal expressed the opinion that without a dress code the students would polarize into camps of "long hairs" and "short hairs." Mr. Lauer also indicated that, in his opinion, if boys were allowed to wear long hair so as to look like girls, it would create problems with the continuing operation of the school because of confusion over appropriate dressing room and restroom facilities.

The school administrators offered evidence which indicated that a fight had occurred between a student with long hair and one with short hair at a non-school function. The athletic director suggested that, although he had encountered no problems, long hair might affect sanitation in the swimming pool. He further commented that a boy wearing long hair and somewhat unusual attire had attracted attention and caused a commotion in the hallway of the school on one occasion. The shop teacher interjected that there was a risk of injury in his classes for a student wearing long hair. Another teacher testified that, in her opinion, students wearing long hair did not possess as good an attitude toward their studies as those with short hair. The school superintendent stressed in his testimony the possible reaction of other students, teachers, and the public as possibly jeopardizing the St. Charles educational program. He noted that the community favored the dress code and felt that this justified its imposition.

We find virtually no evidence in this record to support the school board's contention that the hair regulations are necessary to prevent disruptions at St. Charles High School. The primary weakness in the state's case is that the cited student behavorial problems existed even though all of the students, except Stephen, were in compliance with the regulations, albeit grudgingly in some instances. It is conceded that Stephen was not involved in any conduct which caused a disturbance. There was testimony that one young lady refused to wear a driving helmet which Stephen had previously worn, but there was no indication that this refusal was prompted by sanitary considerations. Stephen testified that he frequently washed his hair, and the school produced no evidence that his hair caused sanitation problems.

Passing to the other evidence presented, we note that much of the board's case rests upon conclusionary assertions that disruptions would occur without the hair regulations. Although we have construed the evidence most favorably to the trial court's findings in support of the regulations' validity, it is apparent that the opinion testimony of the school teachers and administrators, which lacks any empirical foundation, likely reflects a personal distaste of longer hairstyles, which distaste is shared by many in the older generation.[8] We do not feel that

8. The school superintendent, with refreshing candor, testified that "[I]f I were writing a dress code it would not be as liberal as it is now, but then I am of another generation." Conversely, and illustrative of the "generation gap," Nancy Smith, a member of the student council who was called as a witness for the school administration, testified that Stephen's hairstyle did not disturb her.

the suggestion that a correlation exists between the length of a student's hair and his classroom performance requires a response. The assertion that the emergence of long hairstyles will lead to coeducational restrooms is equally untenable. Nor does the acceptance of the dress code by the majority of the St. Charles community and students justify the infringement of Stephen's liberty to govern his personal appearance. Toleration of individual differences is basic to our democracy, whether those differences be in religion, politics, or life-style. Finally, we cannot accept the argument that uniformity of appearance must be maintained in order to prevent "polarization" in the St. Charles student body.

We find only two instances of actual disruption cited in the record. The misconduct in the school cafeteria by students wearing longer hair than other students, but not longer than the school administration's edict, represents an isolated incident. Moreover, its connection with long hair seems, at best, tenuous. The disturbance in the hall related to a young man, wearing long hair and bizarre dress, who was not enrolled in school. Of the justifications advanced by the school administrators in support of the regulations, only those relating to swimming pool sanitation and shop class safety bear any rational relation to the length of a student's hair. The school administration has failed to show why these particular problems cannot be solved by imposing less restrictive rules, such as requiring students to wear swimming caps or shop caps.

■ In summary, the case presented by the school administrators fails to demonstrate the necessity of its regulation of the hair length and style of male students. We hold this regulation invalid and its terms unenforceable.

We reverse and remand this case for the entry of judgment in conformity with this opinion.

ALDRICH, Circuit Judge (concurring).

A recent law review has concluded, after summarizing the cases,

"What is disturbing is the inescapable feeling that long hair is simply not a source of significant distraction, and that school officials are often acting on the basis of personal distaste amplified by an overzealous belief in the need for regulations." 84 Harv.L.Rev. 1702 at 1715 (1971).

The connection between long hair and the immemorial problems of misdirected student activism and negativism, whether in behavior or in learning, is difficult to see. No evidence has been presented that hair is the cause, as distinguished from a possible peripheral consequence, of undesirable traits, or that the school board, Delilah-like, can lop off these characteristics with the locks. Accepting as true the testimony that in St. Charles, Missouri, the longer the student's hair, the lower his grade in mathematics, it does not lead me to believe that shortening the one will add to the other. Indeed, the very fact that such evidence is offered would seem to support the periodical's conclusion.

The area of judicial notice is circumscribed, but I cannot help but observe that the city employee who collects my rubbish has shoulder-length hair. So do a number of our nationally famous Boston Bruins. Barrel tossing and puck chasing are honorable pursuits, not to be associated with effeteness on the one hand, or aimlessness or indolence on the other. If these activities be thought not of high intellectual calibre, I turn to the recent successful candidates for Rhodes Scholarships from my neighboring institution. A number of these, according to their photographs, wear hair that outdoes even the hockey players. It is proverbial that these young men are chosen not only for their scholastic attainments, but for their outstanding character and accomplishments. What particularly impresses me in their case is that they feel strongly enough about

their chosen appearance to risk the displeasure of a scholarship committee doubtless including establishmentarians who may be expected to find it personally distasteful.

It is bromidic to say that times change, but perhaps this is a case where a bromide is in order.

LAY, Circuit Judge (concurring).

I concur.

This case for me is not one of easy decision. On the surface, one can be somewhat troubled with the fact that overloaded federal dockets are further burdened with cases which center their controversies on the length of a school boy's hair. It may well seem appropriate that this issue does not involve a question of substantial constitutional dimension. Freeman v. Flake, 448 F.2d 258 (10 Cir. 1971), or that such problems should be left to local authorities, King v. Saddleback Jr. College District, 445 F.2d 932 (9 Cir. 1971). Nevertheless, a state's invasion into the personal rights and liberty of an individual, of whatever age or description, should present a justiciable issue worthy of federal review. There is little doubt that this regulation seeks to restrict a young person's personal liberty to mold his own lifestyle through his personal appearance. To say that the issue is not "substantial" turns a deaf ear to the basic values of individual privacy and the freedom to caricature one's own image. Our institutions do not rely on submerging individual personality in order to create an "idealized" citizen. Cf. Meyer v. Nebraska, 262 U.S. 390, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). The abhorrence of such treatment stems from the enlightened philosophy that school children must be given every feasible opportunity to grow in independence, to develop their own individualities and to initiate and thrive on creative thought.

Moreover, to say simply that the problem is best left to local authorities begs the intrinsic constitutional issue involved. Such a rationale could sustain any school prohibition of the recognized constitutional rights of students. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

The question confronting us is whether there exists any real educational purpose or societal interest to be served in the discipline the school has adopted. After due consideration I fail to find any rational connection between the health, discipline or achievement of a particular child wearing a hair style which touches his ears or curls around his neck, and the child who does not. The gamut of rationalizations for justifying this restriction fails in light of reasoned analysis. When school authorities complain variously that such hair styles are inspired by a communist conspiracy, that they make boys look like girls, that they promote confusion as to the use of rest rooms and that they destroy the students' moral fiber, then it is little wonder even moderate students complain of "getting up tight." In final analysis, I am satisfied a comprehensive school restriction on male student hair styles accomplishes little more than to project the prejudices and personal distastes of certain adults in authority on to the impressionable young student.

On Suggestion for Rehearing En Banc

A Judge of this Court has, on his own motion, requested a rehearing en banc in this case and has suggested the appropriateness of such rehearing en banc. The Clerk of the Court has transmitted the suggestion to the Judges of the Court who are in regular active service.

It is now here ordered that the motion for rehearing en banc is denied for the reason that the suggestion has failed to obtain the vote of a majority of the Circuit Judges who are in regular active service.