Peter TORVIK, a Minor, by His Mother, Eleanor M. Torvik; Kai Kaasa, a Minor, by His Father, Harris Kaasa, Plaintiffs-Appellees,

and

Keith Uhlenhopp, a Minor, by His Mother, Geraldine Uhlenhopp, Not Appealing,

v.

DECORAH COMMUNITY SCHOOLS and Wayne W. Burns, Superintendent, Defendants-Appellants,

and

Applington Community Schools, and Clifford McKee, Superintendent, Not Appealing.

No. 71-1350.

United States Court of Appeals, Eighth Circuit.

Jan. 5, 1972.

Stephenson, Circuit Judge, dissented.

Miller, Pearson & Gloe, Decorah, Iowa, on briefs for appellants.

Melvin H. Wolf, and C. A. Frerichs, Waterloo, Iowa, on brief for appellees.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

PER CURIAM.

School officials appeal the decision of the district court which found a school regulation requiring all male school students to conform their hair style to certain approved standards violative of an individual's constitutional rights. We affirm.

A regulation governing hair style of students cannot be sustained simply because it is promulgated by school authorities. Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). This approach would otherwise condone prohibition of any recognized constitutional right. Every individual enjoys the liberty to wear the hair style he chooses. Before the state can intrude into recognized areas of privacy and freedom there must exist some rational basis to justify paternal control. This court recently found that no rational relation exists between a similar school regulation and the educational goals and processes of school administration. Bishop v. Colaw, 450 F.2d 1069 (8 Cir. 1971). We affirm the decision of the District Court under the analysis written in *Bishop*.

Judgment affirmed.

STEPHENSON, Circuit Judge (dissenting).

This class action was brought in federal court by two male high school pupils, through their next friends, seeking a declaratory judgment and an injunction against the enforcement of a local hair length and style rule on the grounds that it violated various provisions of the Federal Constitution. The complaint named as defendants and sought relief against the Decorah Community Schools and its Superintendent. Their complaint challenged as invalid that portion of the Thomas Roberts Senior High School Conduct Code [1] providing that:

"All boys who attend [school] will wear their hair in a short, neat and orderly fashion. Unorthodox haircuts or hairstyles will not be permitted."

They alleged that they had been suspended from classes and extracurricular activities for failing to comply with the foregoing rule. They requested a declaration that the challenged rule was unconstitutional and preliminary and permanent injunctions prohibiting their suspension or expulsion under the rule in question.

The defendants opposed the issuance of a preliminary injunction and moved to dismiss the complaint on the grounds, *inter alia*, that (1) the trial court was barred by the Tenth Amendment from interfering with the administration of their school, and that (2) they possess the right to promulgate and enforce rules of the sort under challenge without having first to demonstrate the absence of constitutional encroachment on the rights of students.

Chief Judge McManus denied the defendants' motion to dismiss and decreed that the defendants "are permanently enjoined from enforcing * * * [against the plaintiffs] dress code regulations governing * * * hair style and from suspension of [the plaintiff-students] from classes and all other school activities solely because of hair length."

I

I would reverse and order the case dismissed for want of a substantial federal question.[2] I would do so because I can find no identifiable constitutionally protected value fit for judicial inquiry arising from innocuous regulation of the sort excised here.

II

I express no view as to the need for hair length and style regulation in this Nation's grammar and high schools because of my feeling that such determinations are initially and primarily for the situational judgment of those entrusted with the duty of operating public schools by the constitutions and statutes of the respective states.[3] While I am not prepared categorically to state that the

---

1. As the Superintendent's affidavit in the instant case makes clear, this code, originally enacted and approved by the student council of the high school, was adopted by the faculty and administration of the school and, on September 21, 1970, reaffirmed by Decorah Community Schools Board of Education. The Board's action is said to have been premised upon the response to a questionnaire mailed to the parents of all senior high school students. The affidavit asserts that 92 per cent of these parents returned the questionnaire and indicated thereon their belief that "a dress and appearance code has contributed positively toward the good general educational atmosphere and some form of appearance code should be retained in said school."

2. Compare Freeman v. Flake, 448 F.2d 258 (CA 10 1971), and Stevenson v. Board of Education of Wheeler County, Georgia, 426 F.2d 1154, 1158 (CA 5 1970), aff'g 306 F.Supp. 97 (SD Ga. 1969).

3. The issue of hair length and style regulation in public schools has provoked a substantial amount of law review and judicial comment. See, *e. g.*, Comment, 84 Harvard Law Review 1702 and Comment, 55 Iowa Law Review 707, and cases there collected. The spectrum of opinion as to the efficacy or wisdom of such regulation in the maintenance of an effective educational system can readily be gleaned from a study of these comments and the plethora of cases discussed and cited therein.

question of whether such regulations are validly imposed presents an especial kind of localized action completely insulated from constitutional scrutiny, there' in most instances exist, in my view, procedures on the state or local level adequate to protect the rights at issue. It is only for the exceptional case, then, that I perceive any need for a rule securing the protection of the federal courts.

In developing such a rule it is essential to consider two quite distinct categories of considerations. First, the task of providing a free public education for this Nation's youngsters has been described by the Supreme Court as "perhaps the most important function of state and local governments." [4] That description implies for me that it is the local school authorities that are to be re-' garded as the expert body to determine what rules and regulations are necessary to effective education in their respective communities. Given the concededly local character of this enterprise, there arises the need to displace no more local discretion and judgment than is absolutely necessary and thereby, to avoid and prevent needless conflict with the administration by local authorities of their own affairs. Second, it is important to recognize that school administrators must of necessity impose a wide range of rules and regulations designed to cultivate and preserve a structured and disciplined atmosphere conducive to study and development of the maturing process of students. In measuring the validity of these rules, adjudication must take into account the student's interest in learning to tolerate and follow regulatory measures not entirely consistent with his individual thinking and situational whim as well as

his right to diverge from the norm by expressing, within reasonable limits, his individual identity and personality.[5] This remains true, of course, even though rules by their very nature encourage a narrow view of individual rights to the extent that they focus on instances where the individual is requested to adhere to a specified standard of conduct. A rule of federal judicial review that deters local authorities from imposing appropriate regulation thus conceives the student's interest in exposure to a disciplined environment too narrowly.

Given these particularized considerations, it is my judgment that the legitimate function of federal courts should be understood as that of protecting students against actual and substantial harm caused by regulatory conduct which clearly transcends constitutional limits.[6] This, it seems to me, can best be accomplished by postulating a governing standard that subjects local school authorities to federal suit only in cases disclosing a substantial deprivation of federally protected rights eventuated by the imposition of a regulation which on its face is arbitrary or capricious. In my view, such a rule would appropriately adjust the role of federal courts to take account of the special countervailing interests generated by the clash of local school administration with student rights, while effectively protecting students from actual and tangible harm in fact.

## III

From the structural setting of this record it is apparent that the District Court placed upon the school authorities

---

4. Brown v. Board of Education, 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954). See also Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed. 2d 228 (1968). Cf. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 507, 89 S.Ct. 733, 21 L.Ed. 2d 731 (1969).

5. Accord, Whitsell v. Pampa Independent School District, 316 F.Supp. 852, 854 (ND Texas 1970) ; Neuhaus v. Torrey,

310 F.Supp. 192, 194 (ND Calif. 1970) and Stevenson v. Board of Education, *supra*, 306 F.Supp., at 101.

6. This is the crux of the approach adopted by this court in cases challenging the validity of rules imposed by *university* authorities. See Esteban v. Central Missouri State College, 415 F.2d 1077, 1089–1090 (CA 8 1970), aff'g 290 F.Supp. 622, 631 (WD Mo. 1968).

the duty and burden of coming forth with competent and preponderant proof tending to negate the students' claim of constitutional infirmity. In my judgment, this approach misconceives the applicable decisional law and I am unable to agree with the cases sustaining it.[7]

I readily recognize that where relief is sought for injuries consequent upon a deprivation of one or more of the basic liberties entitled to vigilant and comprehensive protection under the Bill of Rights, the State is saddled with a heavy burden of justification.[8] But the hair length and style rule attacked here does not implicate freedom of speech,[9] press, religion, petition, assembly or any other specific fundamental personal right or liberty. Little reason remains, therefore, not to accord to school board rules the presumption of validity ordinarily given the regulations of a department or appendage of State government acting within the scope of its authority,[10] and to place upon the party alleging invalidity the duty and burden of so demonstrating. By so locating the burden of proof, school board action will only be challenged when it is genuinely believed to be clearly arbitrary and ca-

pricious. That approach is confirmed by decided cases of this[11] and other[12] circuits dealing with statutory grants of regulatory authority and, indeed, by the attitude of the Supreme Court of Iowa toward school regulations promulgated by local administrators.[13] So viewed, it is my conclusion that the rule in question is sustainable on the ground that these students have wholly failed to demonstrate that it works an arbitrary deprivation of rights protected under the Constitution. I think, contrarily, that the rule reflects an allowable judgment on the part of appropriate local personnel to regulate an area of student conduct heretofore found inimical to an effective educational atmosphere in the community school.

## IV

This record establishes to my satisfaction that the hair length and style rule challenged here was approved and enacted by the students and faculty alike in response to some disruption of classroom atmosphere and some distraction of other pupils. This, when coupled with record factual proof indicating that these students refused to trim their hair for the mere sake of opposing,[14] satis-

7. See, e. g., Bishop v. Colaw, 450 F.2d 1069 (CA 8 1971) ; Crews v. Cloncs, 432 F.2d 1259, 1265 (CA 7 1970) and Breen v. Kahl, 419 F.2d 1034, 1036 (CA 7 1969).

8. See Griswold v. Connecticut, 381 U.S. 479, at 503, 85 S.Ct. 1678, 14 L.Ed.2d 510 (White, J., concurring) and McLaughlin v. Florida, 379 U.S. 184, 194, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). See also, Tinker v. Des Moines Independent Community School District, supra.

9. Tinker, supra, 393 U.S., at 507–508, 89 S.Ct. 733.

10. Compare Brownlee v. Bradley County, Tennessee Board of Education, 311 F. Supp. 1360, 1365 (ED Tenn. 1970) with Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 64 L.Ed. 297 (1920).

11. United States v. Ekberg, 291 F.2d 913, 921 (CA 8 1961), certiorari denied 368 U.S. 920, 82 S.Ct. 242, 7 L.Ed.2d 135,

and Review Committee, Venue VII, etc. v. Willey, 275 F.2d 264, 272 (CA 8 1960), certiorari denied 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1522.

12. New York Foreign Freight Forwarders and Brokers Association, Inc. v. Federal Maritime Commission, 337 F.2d 289, 295 (CA 2 1964), certiorari denied 380 U.S. 910, 85 S.Ct. 893, 13 L.Ed.2d 797 and McDonald v. Lee, 217 F.2d 619, 624 (CA 5 1954), vacated on other grounds 349 U.S. 948, 75 S.Ct. 893, 99 L.Ed. 1274.

13. Board of Directors of Independent School District of Waterloo v. Green, 259 Iowa 1260, 147 N.W.2d 854, 857–858 (1967).

14. The plaintiffs' rebuttal testimony consisted of the testimony of plaintiff Kaasa, his father and that of plaintiff Torvik's mother. Plaintiff Kaasa testified that he chose not to trim his hair simply to demonstrate that "I won't accept everything that is told me." Mrs. Torvik indicated that similar considerations supplied the impetus for her son's conduct.

fies me that we here are dealing with a rule that works but a minor inconvenience to the allegedly distressed plaintiffs and one that is necessary to preserve the decorum essential to a productive educational environment. We are confronted, in short, with a clear case of simple disobedience parading as an assertion of constitutional rights. To those who must persist in arguing that ours is a Nation "bent on turning out robots," [15] the short answer is that such has not occurred. Because this product of participatory democracy in the Decorah Community Schools has been expensed as a result of an exaggerated solicitude for the "liberties" of 2 disruptive students, I must dissent.

Hays, Circuit Judge dissented, and filed opinion.

---

15. Ferrell v. Dallas Independent School District, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125. (Douglas, J., dissenting).