**Marilyn E. BANNISTER and Marilyn E. Bannister as she is mother and next friend of Kevin Bannister**

**v.**

**Antonio G. PARADIS as he is Principal of the Pittsfield High School and Henry F. Stapleton, Roland F. Charron, and E. Windsor Burbank as they are members of the Pittsfield School Board.**

**Civ. A. No. 3144.**

United States District Court,
D. New Hampshire.

Sept. 10, 1970.

Harold W. Perkins, Perkins, Perkins & Douglas, Concord, N. H., for plaintiffs.

Frederic T. Greenhalge, Concord, N. H., for defendants.

## OPINION

BOWNES, District Judge.

This action was brought pursuant to Title 42, United States Code, Section 1983, by Kevin Bannister, a student at the Pittsfield Junior High School, through his mother and next friend, Marilyn E. Bannister, against the principal of the Pittsfield High School and the members of the Pittsfield School Board. The controversy centers on that portion of the Pittsfield dress code which provides as to boys: "Dungarees will not be allowed." [1]

## STIPULATED FACTS

Prior to hearing, the parties entered into a stipulation of facts as follows. Kevin Bannister is twelve years old and is a student in the sixth grade of the Pittsfield High School which runs from the fifth through the twelfth grades, and is a public school. The present version of the dress code was adopted unanimously by the School Board on April 27, 1970, and the only section of the dress code in issue is the section quoted above referring to dungarees. The plaintiff, however, does not agree that the dress code is constitutional as to its other provisions. Kevin was sent home for violation of the dress code because he was wearing blue jeans. At no time was force used to require Kevin to leave school.

## FINDINGS

At the outset, the Court has had some difficulty defining the word "dungarees." The principal of the school defined "dungarees" as working clothes made of a coarse cotton blue fabric. The Chairman of the School Board defined "dungarees" as a denim fabric pant used for work with color of no significance. Webster's Third International Dictionary defines "dungarees" as heavy cotton work clothes usually made of blue dungaree. For purposes of this case, the Court finds that blue jeans and dungarees are synonymous and that

Kevin Bannister deliberately violated the school dress code on at least two occasions by wearing blue jeans to school. These violations were with the full knowledge and consent, if not the actual urging, of Kevin's parents. At the time the violations occurred, the blue jeans were neat and clean, as was all of Kevin's ensemble.

There was no evidence that the wearing of dungarees of any color had ever caused any disturbance at the school or given rise to any disciplinary problems. Kevin's wearing of blue jeans did not cause any disturbance and there was no disciplinary problem involved except the one involving Kevin himself. It can be fairly concluded that wearing clean blue jeans does not constitute a danger to the health or safety of other pupils and that wearing them does not disrupt the other pupils.

The principal of the school, Mr. Paradis, who has had a total of seven years' experience in teaching and school administration, testified that discipline is essential to the educational process, and that proper dress is part of a good educational climate. It was his opinion that if students wear working or play clothes to school, it leads to a relaxed attitude and such an attitude detracts from discipline and a proper educational climate. Mr. Paradis stated further that students with patches on their clothes and students with dirty clothes, regardless of the type of clothing, should be sent home. The Court notes here that there is nothing in the dress code specifically stating that clothes should be neat and clean. The dress code, as to the boys, is directed primarily to specific prohibitions and does not promulgate any positive standards to follow. On cross-examination, the principal stated: "I apply the dress code as I see it. We don't define the term dungarees as to what it is."

The Chairman of the School Board, E. Windsor Burbank, testified that it was his opinion, and the opinion of the School Board, that the relaxed atmosphere in-

1. The entire dress code is attached as an Appendix to this opinion.

duced by wearing work or play clothes to school does not fit into the atmosphere of discipline and learning. This opinion was based on the Chairman's assertion that California students had poor academic records and that this was due to the sloppy and casual attire worn by them to school. The Chairman is a full time pilot for TWA Airlines and his knowledge of the type of school dress worn by students in California was based on his observations at the times that his airplane schedule took him to various sections of California. The Chairman did not explain the basis for his assertion that California high school students have poor academic records.

Prior to the adoption of a revised dress code in 1970, the Student Council had recommended that the prohibition against dungarees be eliminated. The School Board did not accede to this request, but no reasons were given for its refusal.

### RULINGS

The first issue to which the Court addresses itself is whether, under these facts, the plaintiff states a cause of action within the purview of the Civil Rights Act. 42 U.S.C. § 1983 (1964).[2]

■ New Hampshire Revised Statutes Annotated, Chapter 189, Section 15 provides:

> *Regulations.* The school board may, unless otherwise provided by statute or state board regulations, prescribe regulations for the attendance upon, and for the management, classification and discipline of, the schools; and such regulations, when recorded in the official records of the school board, shall be binding upon pupils and teachers.

There is no question, therefore, that the Pittsfield dress code is action by the State of New Hampshire. The serious question is whether or not the prohibition of wearing dungarees is a deprivation of any rights, privileges, or immunities secured by the Constitution of the United States. The Court has been unable to find any cases brought under the Civil Rights Act where the issue has been wearing apparel. Students and school boards seem to have become entangled in the hirsute aspect of school dress codes to the exclusion of almost everything else. The only case that comes close to the case before the Court is Westley v. Rossi, 305 F.Supp. 706 (D.Minn.1969), in which the plaintiff started out by violating several prohibitions of the dress code, but asserted in court that he was perfectly willing to comply with all of the rules and dress codes of his high school except for the length of his hair. This dearth of cases relative to wearing apparel in the Civil Rights field may be an indication that neither pupils nor school boards look on clothes with the same emotion and fervor with which they regard the length of a young man's hair or it may indicate, as the Court believes it does, that most school boards are no longer concerned with what a student wears to school as long as it is clean and covers adequately those parts of the body that, by tradition, are usually kept from public view.

There was no suggestion that the wearing of blue jeans, clean or otherwise, in any way constitutes a right of expression. The First Amendment, therefore, does not apply and is not an issue.

■ Certainly, the prohibition against the wearing of blue jeans or dungarees cannot by any stretch of the imagination touch the right of privacy as delineated in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

---

**2.** § *1983.   Civil action for deprivation of rights*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ If it were not for the case of Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970), the Court might be tempted to dispose of this matter on the ground that there was no deprivation of any constitutional rights. The language and reasoning of that case, however, convinces us that a person's right to wear clothes of his own choosing provided that, in the case of a schoolboy, they are neat and clean, is a constitutional right protected and guaranteed by the Fourteenth Amendment. Judge Coffin, in writing the opinion, quoted Union Pacific Railway Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891), which stated:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

Surely, the commodious concept of liberty invoked by Judge Coffin, embracing freedoms great and small, is large enough to include within its embrace the right to wear clean blue jeans to school unless there is an outweighing state interest justifying their exclusion. Richards v. Thurston, *supra*, 424 F.2d at page 1285.

Since we have determined that a personal liberty is involved, and that the plaintiff has stated a claim under 42 U.S.C. § 1983, we now consider the second question, and that is whether or not the regulations against the wearing of dungarees is justified under these circumstances. Going again to Richards v. Thurston, *supra*, for our guidelines, we take into account the nature of the liberty asserted, the context in which it is asserted, and the extent to which the intrusion on the liberty is confined to the legitimate public interest to be served.

On the scale of values of constitutional liberties, the right to wear clean blue jeans to school is not very high. There was no suggestion by the plaintiff that he could not afford pants other than blue jeans, although there was testimony by another parent that she had sent her son to school at the end of the year in blue jeans because she could not afford to buy him a pair of dress pants.

■ On the other hand, there was no showing that the wearing of dungarees in any way inhibited or tended to inhibit the educational process. The Court is, of course, mindful of the testimony of the principal and the Chairman of the School Board that wearing work clothes or play clothes is subversive of the educational process because students tend to become lax and indifferent. The Court confesses, however, that it has considerable difficulty accepting this proposition. There was no expert testimony to this effect with the exception of that of Mr. Paradis. While the Court realizes that Mr. Burbank's experience on the School Board of eight years' standing does give him certain credentials, it does not qualify him as an expert in the field of education and teaching. There was no evidence as to how many other school boards in the state followed a similar dress code nor, with the exception of Mr. Burbank's rather casual observations of the California school system, was there any testimony as to the type of dress worn by other pupils in any other schools.

In Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), the Court pointed out at page 1037:

> Although schools need to stand in place of a parent, in regard to certain matters during the school hours, the power must be shared with the parents, especially over intimately personal matters such as dress and grooming.

Quoting *Breen* again:

> To uphold arbitrary school rules which "sharply implicate basic constitutional values" for the sake of some nebulous concept of school discipline is contrary to the principle that we are a government of laws which are passed pursuant to the United States Constitution. At page 1037.

■ We realize that a school can, and must, for its own preservation exclude

persons who are unsanitary, obscenely or scantily clad. Good hygiene and the health of the other pupils require that dirty clothes of any nature, whether they be dress clothes or dungarees, should be prohibited. Nor does the Court see anything unconstitutional in a school board prohibiting scantily clad students because it is obvious that the lack of proper covering, particularly with female students, might tend to distract other pupils and be disruptive of the educational process and school discipline.

■ While the Court recognizes that school boards do have power to adopt reasonable restrictions on dress as part of its educational policy and as an educational device, the school board's power must be limited to that required by its function of administering public education.[3] The observation in Westley v. Rossi, *supra*, is pertinent.

> The standards of appearance and dress of last year are not those of today nor will they be those of tomorrow. Regulation of conduct by school authorities must bear a reasonable basis to the ordinary conduct of the school curriculum or to carrying out the responsibility of the school. 305 F.Supp. at page 714.

■ The Court rules that the defendants have not justified the intrusion on the personal liberty of Kevin Bannister, small as that intrusion may be, and that the prohibition against wearing dungarees is unconstitutional and invalid. The School Board and the principal of the Pittsfield High School are permanently enjoined from enforcing that portion of the dress code which prohibits boys from wearing dungarees. No costs to either party.

So ordered.

### APPENDIX

The PITTSFIELD SCHOOL BOARD adopted the Proposed Dress Code which was initiated by the Student Council.

3. Goldstein, The Scope and Sources of School Board Authority to Regulate Student Conduct and Status: A Non-Constitutional Analysis, 117 University of Pennsylvania Law Review 373 (1969).

## DRESS CODE

### 1970–71

BOYS

1. Hair cannot be over the eyes, ears or over the collar. Sideburns are allowed provided they are not below the earlobe.

2. Shirts must be tucked in unless they are square cut in which case they can be left out. T-shirts, sweatshirts will not be allowed as outside garments. Jersey shirts without lettering or pictures will be allowed.

3. Dungarees will not be allowed.

4. Cleats will not be added to shoes. Socks must be worn at all times. Sandals are not allowed.

5. No neck jewelry.

6. Outer clothing will remain in the locker unless specific permission is given by the office.

7. No bell bottoms will be allowed.

GIRLS

1. No dungarees, slacks or shorts will be worn during the school day.

2. Blouses will be tucked in unless designed with a straight edge.

3. Skirts must be a reasonable length and in lady like appearance.

4. Culottes may be worn.

5. Makeup may be worn with discretion. No hairclips, curlers, or kerchiefs may be worn.

6. Sandals are not allowed.

7. Maxi and midi skirts will be allowed.

GENERAL

1. Ankle high footwear may be worn.

2. No bleached clothing will be worn.