James M. HINES, Sr. and Andrea L. Hines, on behalf of their minor son, James M. Hines, Jr., Appellants–Plaintiffs,

v.

CASTON SCHOOL CORPORATION, Appellee–Defendant.

No. 25A05–9401–CV–22.

Court of Appeals of Indiana.

June 8, 1995.

Rehearing Denied July 24, 1995.

Franklin A. Morse, II, James M. Lewis, Barnes & Thornburg, South Bend, Richard A. Waples, Peggy A. Hillman, Indiana Civ. Liberties Union, Indianapolis, C. Richard Oren, Rochester, for appellants.

Charles R. Rubright, George T. Patton, Jr., Bose McKinney & Evans, Indianapolis, David J. Wallsmith, Nichols Wallsmith & Weaver, Knox, for appellee.

David J. Emmert, Julie M. Slavens, Indianapolis, for amicus curiae Indiana School Boards Assn.

## OPINION

SHARPNACK, Chief Judge.

Among the essential functions of our constitutional law is the resolution of conflicts between the rights of the individual and the interests of the community. This case illustrates how one such conflict may be played out upon a field so small as the ear lobe of a ten year-old boy.

In September, 1991, Jimmy Hines, a fourth-grader, began wearing a single gold stud earring to school at Caston Elementary School in Fulton County. Jimmy had attended Caston Elementary since first grade, but was considered a transfer student because he did not live in one of the four townships constituting the Caston school district. Jimmy and his parents, James and Andrea Hines, lived in Union Township, which had entered into a contract with Caston and two other school districts for the education of the township's children.

Shortly after Jimmy wore his earring to school, the Hineses were asked to meet with Russell Phillips, principal of the school. Phillips informed the Hineses that although the elementary school had no written dress code, the Caston junior and senior high schools, which are housed in the same facility with the elementary school, had a rule pro-hibiting the wearing of earrings by male students. On November 18, 1991, David M. McKee, superintendent of the Caston School Corporation, sent a letter to the Hineses stating as follows:

> "Your son wearing an earring is in violation of the school's policy. The wearing of a bandage over the earring for the purpose of covering it is not acceptable. Upon receipt of this letter, Jimmy is to discontinue wearing the earring at Caston Elementary School. Mr. Phillips has been requested to take appropriate steps to enforce this policy."

Record, p. 213. Jimmy continued to wear the earring, however, and principal Phillips took no action to enforce the superintendent's order.

On July 21, 1992, the Caston Board of School Trustees approved a revised elementary student handbook that included the following provision:

> "Students are not to wear jewelry or other attachments not consistent with community standards or that could pose a health or safety hazard to either the student himself or to other students in his presence."

Record, p. 219. The Hineses were notified of the new rule on July 27, 1992. They requested clarification of the rule, and time was allotted to satisfy their request on the agenda of the school board meeting on August 4, 1992. The Hineses failed to attend the meeting.

On August 18, 1992, Jimmy wore his earring on the opening day of school. At 10:00 a.m., he was asked to remove the earring. Upon his refusal to do so, principal Phillips suspended Jimmy from classes for four and one-half days. On August 24, 1992, the Hineses, through counsel, requested a hearing on the suspension. On August 25, 1992, Phillips suspended Jimmy for an additional five days or until he returned to school not wearing the earring.

A hearing on the matter was held on September 9, 1992, with high school principal James Hanna serving as hearing examiner. On September 11, 1992, the hearing examiner issued his findings and recommendation that Jimmy be transferred to either of the

two other schools that accept students from Union Township, both of which permit male students to wear earrings. On September 29, 1992, the Caston school board adopted the hearing examiner's findings and recommendation. Rather than transfer to another school, Jimmy stopped wearing the earring to school.

On December 1, 1992, the Hineses filed their complaint against the Caston School Corporation for a declaratory judgment and injunctive relief. The case was tried before the court on August 2, 1993. On September 30, 1993, the court ruled in favor of the Caston School Corporation, stating that the rule prohibiting male students from wearing earrings was proper and should not be enjoined from enforcement. The trial court held that the Hineses "not only failed to show that there was no basis for the governmental policy," but that the Caston Schools had "showed affirmatively that their policy was not irrational or arbitrary." Record, p. 200–01. The court found further that

> "[t]he enforcement that bars males from wearing earrings is in keeping with legitimate educational goals of the Caston School District; the plaintiffs have failed to show that the rule is arbitrary while the school has shown a nexus between this rule and its goals."

Record, p. 202.

We note that the trial court entered a general judgment accompanied by a memorandum discussing the facts of the case, the applicable law, and the court's reasoning. Under Ind.Trial Rule 52(A)(1), a trial court is required to make special findings of fact without request in granting or refusing preliminary injunctions. We will treat the trial court's memorandum as special findings, and we may not set aside the findings or judgment unless clearly erroneous, with due regard given to the opportunity of the trial court to judge the credibility of the witnesses. T.R. 52(A).

█ The Hineses present one issue for our review, which we restate as whether the trial court erred in finding that the Caston Elementary School's rule prohibiting the wearing of earrings by boys did not violate Jimmy's constitutional rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.[1]

█ It is well-settled in American jurisprudence that neither teachers nor students shed their constitutional rights "at the schoolhouse gate." *Tinker v. Des Moines Indep. Com. Sch. Dist.* (1969), 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731.

> "In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State."

393 U.S. at 510, 89 S.Ct. at 738. In determining whether the trial court erred, our task is to examine the earring ban in light of the constitutional standards applicable under each of the constitutional provisions invoked by the Hineses.

I

The essence of the Hineses' due process argument is that Jimmy's fundamental right to the possession and control of his own person in matters of personal appearance is denied by the earring ban.

In *Kelley v. Johnson* (1976), 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708, the United States Supreme Court assumed the existence of a liberty interest within the Fourteenth Amendment in matters of personal appearance. *Id.*, 425 U.S. at 244, 96 S.Ct. at 1444. Prior to *Kelley*, the nature of this liberty interest had been explored in a trilogy of Seventh Circuit opinions addressing students' challenges to public school hair-length

---

1. The Hineses mention the provisions of the Indiana Constitution parallel to the provisions of the United States Constitution cited here, but provide no authority or argument for a separate and independent standard under the Indiana Constitution. Thus, we may not address the Hineses' state constitutional claims. *See St. John v. State* (1988), Ind., 523 N.E.2d 1353, 1355.

regulations[2] and in numerous decisions in other federal circuits.[3] We need not declare the existence of such a liberty interest for the purposes of this opinion; nonetheless, we find persuasive the sentiments of the Eighth Circuit:

"We believe that, among those rights retained by the people under our constitutional form of government, is the freedom to govern one's personal appearance. As a freedom which ranks high on the spectrum of our societal values, it commands the protection of the Fourteenth Amendment. [citation omitted] The importance attached to such personal freedom has been long recognized. Writing in 1891, Justice Gray said:

No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, 'The right to one's person may be said to be the right of complete immunity: to be let alone.' [*Union Pacific Railway Company v.*

Botsford,* 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891).]"
*Bishop v. Colaw* (8th Cir.1971), 450 F.2d 1069, 1075. Thus, we will assume for the sake of argument that Jimmy possesses a constitutional right to freedom in matters of his personal appearance via the Due Process Clause of the Fourteenth Amendment.

■ We note that the Hineses stipulated at trial that they do not seek to establish that Jimmy's wearing of an earring is protected speech under the First Amendment. This is of consequence in that Jimmy's constitutionally protected liberty interest in personal appearance must not be confused with his constitutionally protected freedom of expression. Under the standards of First Amendment jurisprudence, a restriction on free expression can be no greater than is essential to the furtherance of a substantial government interest. *See United States v. O'Brien* (1968), 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672. Under the due process standard set forth in *Kelley,* "the test is whether the challenger can demonstrate that there is no rational connection between the policy and accomplishment of a public purpose." *Pence v. Rosenquist* (7th Cir.1978), 573 F.2d 395, 398 (citing *Kelley,* 425 U.S. at 247, 96 S.Ct. at 1445–46).[4] Thus,

**2.** *Breen v. Kahl* (7th Cir.1969), 419 F.2d 1034, 1036, *cert. denied,* 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268; *Crews v. Cloncs* (7th Cir.1970), 432 F.2d 1259; and *Arnold v. Carpenter* (7th Cir.1972), 459 F.2d 939. The Hineses argue that these "long hair" cases provide a standard for evaluating the present case. We find *Breen, Cloncs,* and *Arnold* distinguishable in that "it would be impossible to comply with the long hair regulation during school hours and follow the wishes of the students and their parents as to hair length outside the school." *Breen,* 419 F.2d at 1037–38. "[S]ince the impact of hair regulations extends beyond the schoolhouse gate, the degree of state infringement on personal rights is significantly greater than in many other areas of school discipline." *Crews,* 432 F.2d at 1264. In the present case, Jimmy's freedom to wear an earring beyond the schoolhouse gate is in no way impaired by the school board's rule.

**3.** *See, e.g., Gfell v. Rickelman* (6th Cir.1971), 441 F.2d 444; *Richards v. Thurston* (1st Cir.1970), 424 F.2d 1281; *Jackson v. Dorrier* (6th Cir.1970), 424 F.2d 213, *cert. denied,* 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88; *Griffin v. Tatum* (5th Cir. 1970), 425 F.2d 201; *Ferrell v. Dallas Independent School District* (5th Cir.1968), 392 F.2d 697, *cert. denied,* 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125.

**4.** We disagree with the dissent's assertion that *Kelley* and *Pence* may not be applied to the present case because they were decided in the context of a government infringement upon the rights of public employees. In both cases, the challenger's employment was a significant factor in the court's analysis, but we reject the dissent's argument that the standard of review should be higher and the burden placed with the school system because Jimmy "brings his challenge as a common citizen," not as "an adult who voluntarily chose government employment." Op. at 337. Public school students in the school environment, like public employees on the job, are subject to behavioral restrictions that infringe on the freedoms they enjoy when engaged in life outside the schoolhouse gate. "[T]he right to appear au naturel at home is relinquished when one sets foot on a public sidewalk. Equally obvious, the very nature of the public school education requires limitations on one's personal liberty in order for the learning process to proceed." *Richards v. Thurston* (1st Cir.1970), 424 F.2d 1281, 1285. Indeed, a child receiving a state mandated and provided education is in an environment that by its nature must be subject to strict controls on the conduct of teachers and students. As Justice Powell wrote,

a rational basis test applies here and the burden is on the Hineses to show that the earring rule has no rational basis.[5]

The Hineses have argued throughout the proceedings in this case that the ban on earrings serves no purpose rationally related to the educational function of the school. At trial, the Hineses presented evidence intended to refute the school board's reasons for imposing the ban and to support the Hineses' contention that the wearing of earrings by males is not inconsistent with community standards in the Caston area.

The Caston School Corporation argued to the trial court that the earring ban, as one aspect of the school dress policy, serves several purposes related to education: First, the policy creates discipline, a sense of pride, and positive attitudes among students because it discourages rebellion against local community standards of dress, under which earrings are considered female attire. Second, by creating a positive environment, the policy fosters higher rates of attendance, a lower dropout rate, and higher levels of academic achievement of students in the Caston schools. Third, the policy helps prevent the influx into the schools of gangs and cults, for which the wearing of an earring may symbolize membership. Fourth, the policy helps discourage students' identification with drug use or homosexuality, either of which may be symbolized by the wearing of an earring. Fifth, the policy addresses safety concerns in that male students are more inclined to roughhousing than female students, particularly during gym class, and thus an earring may result in injury to an ear lobe or to the wearer's head.

▪ Upon an examination of the record, we find that several of the school board's arguments in favor of the ban are unsupport-

"The primary duty of school officials and teachers ... is the education and training of young people. A State has a compelling interest in assuring that the schools meet this responsibility. Without first establishing discipline and maintaining order, teachers cannot begin to educate their students."
*New Jersey v. T.L.O.* (1985), 469 U.S. 325, 350, 105 S.Ct. 733, 747, 83 L.Ed.2d 720 (J. Powell, concurring). Thus, just as myriad demands are placed upon police officers that may infringe on an officer's freedom of choice, myriad restrictions are placed upon students' behavior in the course of the school day, and the clear necessity for such restrictions justifies the presumption under the rational basis standard that the school regulation is constitutional. We note, in addition, that this presumption is further warranted by the fact that a school system's power to maintain order in the schools is accompanied by a common law duty to exercise ordinary and reasonable care for the safety of the children under its authority, the violation of which may subject a school system to liability. *See Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701, 705.

5. The dissent asserts that a more rigorous standard is required to be applied under the Indiana Code provisions governing the rulemaking authority of school boards. Ind.Code § 20–8.1–5–2 provides, in pertinent part:

"The governing body may make written rules and establish written standards concerning student conduct which are reasonably necessary to carry out, or to prevent interference with carrying out, an educational function or school purpose."

I.C. § 20–8.1–5–2(c). This delegation of authority is qualified as follows:

"Rules, standards or actions which interfere with a constitutionally protected fundamental student right shall be valid only in instances where they are necessary to prevent an interference with the educational function of the school. All rules, standards or actions shall be reasonably necessary in carrying out school purposes, and all rules, standards or actions shall be narrowly constructed in order to accomplish their purpose with minimal infringement on constitutionally protected rights."

I.C. § 20–8.1–5–3(a).

The dissent mistakenly treats this statute as a mandate from the legislature directing what construction the judiciary is to place on constitutional provisions. Interpreted as such, the statute itself may be unconstitutional, but we are not faced with that question here. *See State ex rel. Kostas v. Johnson* (1946), 224 Ind. 540, 69 N.E.2d 592, 595 ("Any act by which the Legislature [sic] attempts to hamper judicial functions or interfere with the discharge of judicial duties is unconstitutional and void."), and 16 C.J.S. *Constitutional Law* § 116 ("It is beyond the power of the legislature to place a binding construction on a constitutional provision."). The statute is, rather, a limitation on the rulemaking authority of school boards, and the question of whether the school board exceeded its authority in promulgating a particular rule is distinct from the question of whether a particular rule is unconstitutional. Indeed, a school board may be statutorily restricted from making rules which are otherwise constitutional. The Hineses did not challenge the earring ban on the basis that the school

ed by evidence. For example, no evidence was offered of a correlation between earrings and cults or homosexuality, and a board member admitted that to his knowledge no cults or gay population existed in the Caston schools.[6] While board members had heard of other communities where earrings were associated with gangs, no evidence was presented to show that gangs existed in the Caston schools, and a board member admitted that he did not think that every male that wears an earring is a member of a gang. The school's safety concerns, as well, seem dubious in light of evidence that female students, who are permitted to wear earrings to school in Caston, avoid injury by removing their earrings before gym class.

On the other hand, evidence was presented that the enforcement of a strict dress code was a factor in improving students' attitudes toward school, and that this change in attitude had led to improvements in school attendance, drop-out rates, and academic performance. Evidence was presented that under local community standards of dress, earrings are considered female attire, and that the earring rule discourages rebelliousness. Evidence was presented that the wearing of earrings by males was inconsistent with community standards in the Caston area, which is, by all accounts, politically and religiously conservative. Members of the Caston school board and school administrators testified that the earring ban serves to prevent "disrespect for authority and disrespect for discipline within the school" by maintaining "a basic

standard for the children to live by." Record, p. 439–40.[7]

It is reasonable that a community's schools be permitted, within constitutional strictures, to reflect its values, and it is a valid educational function to instill discipline and create a positive educational environment by means of a reasonable, consistently applied dress code. Under a due process standard, this is sufficient to show a rational relationship between the rule and "some purpose within the school's competence." *Arnold, supra.*[8]

Thus, we agree with the trial court that the Hineses have failed to show that the earring ban serves no purpose rationally related to the educational function of the school and that, as a result, their due process challenge to the ban must fail.

## II

■ The Hineses' equal protection argument is premised upon the contention that Jimmy has been denied the equal protection of the law because girls are permitted to wear earrings to Caston Elementary School while boys are not. A gender-based discriminatory classification is subject to an intermediate level of scrutiny. *S.V. v. Estate of Bellamy* (1991), Ind.App., 579 N.E.2d 144, 146. The burden is on the challenger to show "that the gender-based classification does not substantially relate to a legitimate government objective." *Olesen v. Board of*

---

board exceeded its statutory authority, and thus that question is not before us.

**6.** To the extent that the wearing of an earring is an expression of sexual orientation, it may be a protected form of speech, but we are not presented with that question here.

**7.** The dissent asserts that elected school officials "should not be in the business of dictating the standards of the community." Op. at 339. We agree, but we note that school board members are elected officials charged by their constituents with the responsibility to "make decisions pertaining to the general conduct of the schools." I.C. § 20–4–8–11(a). The formulating of standards of appearance for children in school is an aspect of their responsibility, and such decisions cannot be made without reference to community standards, as imprecise and changeable as such standards may be. In the present case, the school board did not dictate community stan-

dards but formulated school policy in response to expressions of the community's will.

More importantly, perhaps, we believe that it is not the business of the courts to determine community standards or to become arbiters of acceptable fashion in the public schools.

**8.** It is among a school system's statutorily mandated educational functions to promote knowledge and learning and to maintain an orderly and efficient educational system. I.C. §§ 20–8.1–1–8, –9. We disagree with the dissent's contention that the ban must be shown to be necessary to prevent an interference with educational functions. If it were required to be shown that the wearing of an earring had caused interruptions in classroom instruction or fights on the playground before a ban on earrings could be justified, few school dress restrictions could be upheld, including rules requiring no more than neat, clean attire.

*Educ. of School Dist. No. 228* (N.D.Ill.1987), 676 F.Supp. 820, 823 (citing *O'Connor v. Board of Educ. of School Dist. No. 23* (7th Cir.1981), 645 F.2d 578, 581). Again, the Hineses argue that no legitimate government objective justifies the sex-based discrimination inherent in the earring rule. We disagree.

█ The provision of the elementary school dress code at issue here states that "[s]tudents are not to wear jewelry or other attachments not consistent with community standards...." Record, p. 249. The dress code prohibits all students from wearing jewelry inconsistent with community standards, without respect to gender. As noted above, evidence was presented demonstrating that the wearing of earrings by males is inconsistent with community standards of dress in Caston. The enforcement of community standards of dress to instill discipline has been shown to be a legitimate educational function. Thus, the Hineses have failed to show that the prohibition on the wearing of earrings by boys violates equal protection because it does not substantially relate to a legitimate government objective.

Accordingly, the trial court's judgment denying the Hineses' action for a declaratory judgment and injunctive relief is affirmed.

AFFIRMED.

GARRARD, J., concurs.

BARTEAU, J., dissents with separate opinion.

BARTEAU, Judge, dissenting.

The majority assumes, without determining, that students have a constitutionally protected liberty interest in their personal appearance. I find that students have this liberty interest under the Constitution, and therefore I agree with the majority's assumption. However, the majority relegates this right to one of minimal importance by applying the lowest standard of scrutiny the Supreme Court has prescribed under the Due Process clause. I find that the students's liberty interest is of a high order of importance and, under the Constitution and Indiana law, a heightened level of scrutiny is required.

Also, the majority upholds the trial court's determination that Jimmy Hines failed to carry his burden of proof in his challenges under the Due Process clause and the Equal Protection clause. But, under the heightened level of scrutiny to be applied in each instance, the burden is on the school, not the student, to prove the constitutionality of its actions. I find that the school has failed to satisfy its burden of proof, and that the school's ban on boys wearing earrings violates the Due Process clause and the Equal Protection clause of the Fourteenth Amendment.

For these reasons, I respectfully dissent.

### DISCUSSION

The Fourteenth Amendment safeguards citizens against state encroachment on rights protected under the Constitution. The Supreme Court of the United States has set forth standards that state infringement upon the rights of citizens must satisfy in order to pass constitutional muster. The level of scrutiny to be applied under each standard is commensurate with the important nature of the right encroached upon.

"Strict scrutiny," applied in cases of state infringement upon a fundamental right, requires the state to demonstrate that it has a compelling interest at stake and the means used to achieve that interest are narrowly tailored to fulfill the state's objective. *See, e.g., Bernal v. Fainter* (1984), 467 U.S. 216, 104 S.Ct. 2312, 81 L.Ed.2d 175. The "rational basis" test, applied in cases involving regulations affecting other constitutionally protected interests, affords the state wide latitude and requires that the state have a legitimate interest and employ methods that bear a rational relationship to the state's purpose. *See, e.g., Duke Power v. Carolina Environmental Study Group, Inc.* (1978), 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595. In cases concerning important liberty interests that do not arise to the status of fundamental rights, the state must satisfy "intermediate scrutiny" by demonstrating an important government interest and a substantial relationship between its action and the objectives

it is pursuing. *See e.g., Clark v. Jeter* (1988), 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465; *see also* Lawrence H. Tribe, *American Constitutional Law* 1388 (2d ed. 1988).

### Due Process

The majority follows the lead of *Kelley v. Johnson* (1976), 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708, and *Pence v. Rosenquist* (7th Cir.1978) 573 F.2d 395, by assuming, without determining, that students have a constitutionally protected right in their personal appearance. Under this assumption, the majority applies the "rational basis" test, as did the courts in *Kelley* and *Pence,* and upholds the trial court's finding that Jimmy failed to demonstrate that the dress code is not rationally related to the school's legitimate interest. I disagree with the majority's characterization of the liberty interest at issue and the constitutional standard employed in the analysis.

The Supreme Court and the Seventh Circuit specifically limited the application of *Kelley* and *Pence* to situations in which the government has infringed upon the rights of its employees. This is based upon the fact that government employees voluntarily choose their fields and places of employment, thereby subjecting themselves to greater government regulation.

In *Kelley,* the Supreme Court upheld a regulation of police officers's hair length as being rationally related to the state's interest in keeping the peace. The Supreme Court found that police officers, upon joining a "para-military" branch of government, lose a "myriad" of personal freedoms in order to fulfill their duty to keep the peace, one of which is the unlimited control of their personal appearance. *Kelley,* 425 U.S. at 246, 96 S.Ct. at 1445. But, the *Kelley* majority also noted that the distinction between police officers and common citizens is "highly significant." *Id.* at 244–45, 96 S.Ct. at 1444–45.

The *Pence* decision found this distinction critical to its application of the "rational ba-

sis" test to a school's regulation of facial hair worn by a school bus driver. "Whatever the liberty interest of the citizenry at large, the [U.S. Supreme] Court deemed 'highly significant' the fact that plaintiff in a case of this sort makes his challenge as a government employee and not as a member of the citizenry at large." *Pence,* 573 F.2d at 399. By voluntarily subjecting themselves to government employment, they voluntarily subject themselves to greater government regulation.

The case presented by Jimmy Hines falls clearly outside the shadow of *Kelley* and *Pence.* Jimmy is not an adult who voluntarily chose government employment, but is a child faced with a state restriction on his personal appearance that is compulsorily imposed upon him by way of mandatory school attendance laws. Unlike the government employees in *Kelley* and *Pence,* Jimmy brings his challenge as a common citizen whose constitutionally protected liberty interest is being repressed by the laws of the state. Thus, the application of the "rational basis" test in *Kelley* and *Pence* does not extend to this matter. To the contrary, Indiana law requires that we review the school's rule under a heightened standard of scrutiny.[1]

Our legislature has limited the rulemaking authority granted to public schools as follows:

> All rules, standards or actions shall be reasonably necessary in carrying out school purposes, and *all rules, standards or actions shall be narrowly constructed in order to accomplish their purpose with minimal infringement on constitutionally protected rights.*

I.C. 20–8.1–5–3(a) (in part) (emphasis added). Under the language of I.C. 20–8.1–5–3(a), the legislature mandates that any rules or standards established by schools must be narrowly tailored and employ means that are least restrictive on the students's rights. This requires that the school's action pass a

---

1. There is considerable disagreement among the jurisdictions as to what constitutional standard is to be applied to school regulation of students's appearance. *See* Tribe, *American Constitutional Law* 1388 n. 32 (2d ed. 1988). However, the Indiana legislature has put this dispute to rest by setting forth the standard of scrutiny we are to apply in all constitutional challenges to rules and standards promulgated by Indiana public schools. Ind.Code 20–8.1–5–3(a).

heightened level of scrutiny, if not "strict scrutiny." *See Bernal,* 467 U.S. at 219, 104 S.Ct. at 2315 ("strict scrutiny" requires that state action be narrowly tailored and be least restrictive on constitutionally protected rights). Clearly, the school's rule prohibiting boys from wearing earrings must survive scrutiny more stringent than the majority's minimal "rational basis" test to pass constitutional muster.

The majority disagrees with this interpretation of I.C. 20–8–1.5–3(a), and asserts that such may even be deemed an unconstitutional attempt by our legislature to mandate a more rigorous standard. Op. at 334 n. 5. Clearly, such a conclusion would be erroneous. It is a basic tenet of constitutional law and our system of federalism that the federal Constitution, as a restraint on government, places minimum safeguards against government intrusion upon citizen's liberty interests. States are free, through their own constitutions and statutes, to place greater restraints on government action than those imposed by the federal Constitution.[2] As Chief Judge Sharpnack recently noted:

> The federal Constitution operates to provide at least a minimal protection to citizens no matter in what state the issues may arise. However, it by no means limits the expansiveness of rights provided to those in a particular state, which may freely provide greater protection of individual liberty than the federal Constitution requires.

*Moran v. State* (1993), Ind.App., 625 N.E.2d 1231, 1236, *vacated,* 644 N.E.2d 536, *reh'g denied.*[3] By requiring a heightened level of scrutiny, I.C. 20–8.1–5–3(a) provides greater

protection than the "rational basis" test espoused in *Kelley* and *Pence.* Thus, by enacting I.C. 20–8.1–5–3, the Indiana legislature afforded Indiana school children greater protection under the Constitution, by placing a stricter constraint on government interference with students's rights.

The distinction between the "rational basis" standard applied by the majority and the heightened standard prescribed by our legislature is pivotal to this issue. The "rational basis" test affords the state the presumption that its action is constitutional. *U.S. v. Carolene Products Co.* (1938), 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234. The court will uphold the state action on any rational basis, even one not promulgated by the state. *Williamson v. Lee Optical Co.* (1955), 348 U.S. 483, 490, 75 S.Ct. 461, 466, 99 L.Ed. 563, *reh'g denied,* 349 U.S. 925, 75 S.Ct. 657, 99 L.Ed. 1256. The claimant must overcome the presumption of constitutionality by disproving the assumption that the state action is rationally related to the state's interest. *Carolene Products,* 304 U.S. at 152, 58 S.Ct. at 783. In effect, the "rational basis" test requires the citizen to bear the arduous burden of disqualifying every possible reason the government may have in taking the action.

In applying the deferential "rational basis" test, the majority fails to employ the standard of scrutiny mandated by our legislature. Instead, the majority wrongfully grants the school the presumption that its dress code is constitutional, and places on Jimmy the difficult burden of overcoming that presumption. Had the majority applied the proper standard, it would have found that the school has

---

2. This power is not limited to state legislatures. A recent example of the federal legislature exercising its power to establish greater protections than the minimum safeguards afforded by the federal Constitution is the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.* In *Employment Division v. Smith* (1990), 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876, *reh'g denied,* the Supreme Court applied the "rational basis" test in upholding a state action that substantially burdened the free exercise of religion. Congress subsequently enacted the Religious Freedom Restoration Act, which requires judicial review of such action under the "strict scrutiny" standard, and affords citizens greater protections than the minimum constitutional safeguards. *See Campos v. Coughlin* (S.D.N.Y.1994), 854

F.Supp. 194; *Lawson v. Dugger* (S.D.Fla.1994), 844 F.Supp. 1538.

3. In *Moran,* we faced the question of whether a warrantless search of a garbage container was lawful under the Indiana Constitution, even though the United States Supreme Court has determined that such was not lawful under the federal Constitution. While our Supreme Court disagreed with our conclusion that Indiana law affords citizens greater protection than the federal Constitution in that matter, the principle that a state may provide its citizens greater protection than that required by the federal Constitution remains a pillar of federalism.

failed to produce any substantiated justification for its dress code and has not satisfied its burden.

Under heightened scrutiny, the state does not enjoy a presumption of constitutionality. To the contrary, once the claimant shows that the right involved requires a heightened level of scrutiny, the state must affirmatively demonstrate a substantial justification for its action. *See, e.g., Memorial Hosp. v. Maricopa County* (1974), 415 U.S. 250, 258, 94 S.Ct. 1076, 1082, 39 L.Ed.2d 306 (state must demonstrate compelling interest and justify a restriction on citizens's rights). I find that the Constitution and Indiana statute mandate "intermediate scrutiny," requiring the school to demonstrate that the dress code bears an actual relationship to an important school objective, and that the dress code is narrowly constructed to create a minimal infringement on the constitutional rights of students. I.C. 20–8.1–5–3(a); Tribe, *American Constitutional Law* 1388 (2d ed. 1988); *see also, Wallace v. Ford* (E.D.Ark.1972), 346 F.Supp. 156, 162, and *Bannister v. Paradis* (D.N.H. 1970), 316 F.Supp. 185, 189 (holding schools bear the burden of showing an actual relationship between restrictive dress code provisions and school objectives).

The evidence presented by the school fails to satisfy its burden of proof under Indiana's heightened standard. I agree with the majority when it says that the evidence does not support the school's contention that its ban on boys wearing earrings discourages the influx of gangs, drug use and homosexuality into the school, or that it promotes safety concerns. The school has completely failed to demonstrate any correlation between boys wearing earrings and any of these subjects.

The majority finds that prohibiting boys from wearing earrings is rationally related to the school's effort to improve students's attitudes toward school, and that the change in attitudes has led to improvements in attendance, drop-out rates and academic performance. Applying the proper standard of "intermediate scrutiny" prescribed by our legislature, I find this argument unpersuasive. First, outside of some conclusory statements made by members of the school board, there is no evidence whatsoever demonstrating that the students have better attitudes and perform better *because* boys are not permitted to wear earrings (or that students perform worse *because* boys are permitted to wear earrings).[4] There is no actual relationship between the prohibition and the school's objectives.

Second, the school's argument misses the focus of the matter at hand. What is at issue here is whether Jimmy's earring created a disruption within the school that hindered the learning environment, not whether school performance has improved under the dress code.

> Personal freedoms are not absolute; they must yield when they intrude upon the freedoms of others. Our task, therefore, is to weigh the competing interests asserted here. In doing so, we proceed from the premise that the school administration carries the burden of establishing the necessity of infringing upon [the student's] freedom in order to carry out the educational mission of the ... school.

*Wallace,* 346 F.Supp. at 161 (citing *Bishop v. Colaw* (8th Cir.1971), 450 F.2d 1069). The school may restrict Jimmy's constitutional right only if the school can demonstrate that the exercise of that right interferes with other students's academic endeavors. The school has failed to satisfy this burden.

Further, the school has not demonstrated that its dress code is the least restrictive means of improving the school's performance. The school seeks academic improvement by repressing students's constitutionally protected rights, rather than attempting to achieve its objectives through other activities that bear a positive correlation to student performance. The school has failed to demonstrate the absence of a less restrictive alternative, as required under I.C. 20–8.1–5–3(a).

---

4. In *Bannister,* school board members offered justifications for its restrictive dress code that are similar to those promulgated by the school board members in this case. Finding the arguments unpersuasive, the court held that membership on a school board alone does not qualify one as an expert in education and teaching methods. 316 F.Supp. at 188.

There is no question that schools may properly place limitations on the attire of students in order to preserve order in the schools and further education. *See, e.g., Bannister,* 316 F.Supp. at 189. However, the Constitution stands as a safeguard to protect the rights of all citizens who, like Jimmy Hines, one day find themselves in a political or ideological minority.

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.

*West Virginia Bd. of Educ. v. Barnette* (1943), 319 U.S. 624, 638, 63 S.Ct. 1178, 1185–86, 87 L.Ed. 1628. Elected school officials should not be in the business of dictating the standards of the community, and cannot force students to submit to their interpretations of "community standards" without justifying the restraint on students's liberty under the Constitution.[5] To protect the constitutional rights of Indiana students, the Indiana legislature requires that the school demonstrate that any rules or standards established by the school bear an actual relationship to the school's objectives and be narrowly constructed to minimally interfere with the constitutional rights of the students.

The record is devoid of any evidence demonstrating an actual relationship between the school's action and its objectives. The school's determination and enforcement of "community standards" is not narrowly constructed to minimally infringe on students's rights. I find the school's prohibition on boys wearing earrings impermissible under the Due Process clause and I.C. 20–8.1–5–3.

### Equal Protection

Jimmy Hines also challenges the school's ban on boys wearing earrings under the Equal Protection clause of the Fourteenth Amendment, arguing that the school allows girls to wear earrings while wrongfully prohibiting boys from doing the same. The trial court upheld the dress code against Jimmy Hines's challenge, finding that Jimmy Hines failed to demonstrate that the prohibition is not substantially related to the legitimate interest of creating a positive learning environment.

The Supreme Court has declared that a class based upon gender is a "suspect" class which must survive "intermediate scrutiny." *Reed v. Reed* (1971), 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–54, 30 L.Ed.2d 225; *Craig v. Boren* (1976), 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, *reh'g denied,* 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574. "To withstand constitutional challenge, ... classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig,* 429 U.S. at 197, 97 S.Ct. at 457.

Jimmy Hines challenges the school's determination that "community standards" permit only girls to wear earrings and the enforcement of that interpretation to prohibit boys from engaging in the identical conduct. The enforcement of the rule is based solely on gender. Therefore, the appropriate standard for weighing the constitutionality of the school's action under the Equal Protection clause is whether the classification serves important school objectives and is substantially related to achievement of those objectives. *Craig,* 429 U.S. at 197, 97 S.Ct. at 457.

The majority affirms the trial court's determination that Jimmy failed to carry his burden of proof. The court incorrectly places the onus of proof upon the student. Under the standard set forth by the Supreme Court, the burden rests upon the school to show a substantial relationship be-

---

5. The majority asserts that, under this proposed analysis, the court would improperly become the "arbiters of fashion in the public schools." Op. at 335 n. 7. I find this averment disingenuous. To the contrary, it is the majority that casts the court as arbiters of fashion by cloaking a seemingly arbitrary dress code with judicial approval without requiring the school to demonstrate any justification under the Constitution.

tween its actions and an important objective. *Frontiero v. Richardson* (1973), 411 U.S. 677, 689, 93 S.Ct. 1764, 1772, 36 L.Ed.2d 583. Again, the majority wrongfully affords the school the presumption that its action is constitutional. The burden of proof is upon the Caston School Corporation, not Jimmy Hines.

As with Jimmy's challenge under the Due Process clause, an examination of the facts reveals a complete absence of evidence demonstrating a relationship between the ban on boys wearing earrings and an important school objective. Without a substantial correlation between the interest pursued and the means employed, the school cannot justify treating males differently than females under the Equal Protection clause.

In *Craig,* the Supreme Court reviewed an Oklahoma law that allowed women between the ages of 18 and 21 to purchase 3.2% beer but prohibited men that age from doing the same. The state presented statistical evidence indicating that (1) significantly more males under the age of 21 were arrested for drunk driving or drunkenness, (2) among the youths of that age that were killed or injured in accidents, males outnumbered females, (3) males were more apt to drive and drink beer than women, (4) drunk driving arrests in general had increased, and (5) other states had experienced an increase in accidents in which youths drove after imbibing in alcohol. *Id.* at 200–01, 97 S.Ct. at 458–59.

Despite the evidence presented, the Court held that allowing women to purchase 3.2% beer while precluding men the same age from doing the same was not substantially related to the achievement of the important state objective in traffic safety. The Court found that the evidence presented by the state failed to demonstrate that being male was a "proxy" for driving drunk. *Id.* at 201–02, 97 S.Ct. at 459; *see also, J.E.B. v. Alabama ex rel. T.B.* (1994), —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (gender is not a proxy for a biased juror).

The school has failed to produce any evidence whatsoever demonstrating a causal nexus between boys wearing earrings and a negative learning environment. There is virtually no evidence demonstrating that boys wearing earrings is a proxy for gang activity, drug use or homosexuality in schools. The school has not shown a substantial relationship, or even any relationship at all, between these concerns and boys wearing earrings.

Likewise, the unsubstantiated claims of school officials that boys not wearing earrings is a proxy for creating discipline, instilling pride in the children and making the children better students is unpersuasive. In *Craig,* the state presented empirical data relating gender to drunk driving, although the correlation was minimal. The Supreme Court held that the state's statistical evidence failed to satisfy its burden of demonstrating a correlation between gender and the interest pursued. The Caston School Corporation has provided even less evidence of a causal nexus between its dress code and scholastic performance, pointing to improvements in student performance that are otherwise unrelated to boys wearing earrings.

I find that the majority and the trial court have wrongfully placed the burden of proof on Jimmy Hines. The school has failed to demonstrate that its ban on boys wearing earrings is substantially related to providing an environment conducive to learning and is an impermissible gender-based classification under the Equal Protection clause.

### CONCLUSION

I would reverse the decision of the trial court because the trial court applied the wrong constitutional standard and incorrectly placed the burden of proof on the student under the Fourteenth Amendment and Indiana statute. The school has failed to demonstrate that the infringement upon Jimmy Hines's liberty interest in his personal appearance is substantially related to, or the least restrictive means to create, an environment conducive to learning. In that it prohibits boys from wearing earrings in school, the dress code violates the Due Process clause and the Equal Protection clause of the Fourteenth Amendment.

I respectfully DISSENT.