v.

**STATE of Indiana, Appellee/Petitioner.**

No. 49A02–1002–JV–344.

Court of Appeals of Indiana.

Sept. 16, 2010.

Publication Ordered Dec. 2, 2010.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attor-

ney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Respondent C.T. appeals from the finding that she committed Class B misdemeanor Public Nudity[1] if committed by an adult. C.T. contends that the State failed to produce sufficient evidence to sustain the juvenile court's true finding and that Indiana's public nudity statute violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. We affirm.

## FACTS

At approximately 4:30 a.m. on June 16, 2009, Indianapolis Metropolitan Police Officer Jerry Durham responded to a report of three females exposing themselves to passing vehicles. When Officer Durham arrived, he observed sixteen-year-old C.T. and a companion "pulling their bra[s] and their shirt[s] down over their exposed breast[s]." Tr. p. 5. The next day, the State filed a delinquency petition, alleging that C.T. had committed what would be Class B misdemeanor public nudity if committed by an adult. On February 11, 2010, the juvenile court held a hearing on the delinquency petition. At the hearing, when Officer Durham was asked if he had seen C.T.'s nipple during the June 16, 2009, incident, he responded, "As I recall, yes." Tr. p. 5. The juvenile court also dismissed C.T.'s motion to dismiss on the basis that Indiana's public nudity statute violates the equal protection clause of the Fourteenth Amendment. The juvenile court found that C.T. had committed what

would be public nudity if committed by an adult and discharged her to her mother.

## DISCUSSION AND DECISION[2]

### I. Whether the State Produced Sufficient Evidence to Sustain the Juvenile Court's True Finding

■ "In addressing a claim of insufficient evidence, an appellate court must consider only the probative evidence and reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, and determine therefrom whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind.2007) (citing *Whedon v. State*, 765 N.E.2d 1276, 1277 (Ind.2002)). In order to sustain a true finding that C.T. committed Class B misdemeanor public nudity, the State was required to show that she "knowingly or intentionally appear[ed] in a public place in a state of nudity with the intent to be seen by another person[.]" IC 35-45-4-1.5. *Inter alia*, Indiana Code section 35-45-4-1(d) (2008) defines "nudity" as "the showing of the female breast with less than a fully opaque covering of any part of the nipple[.]"

C.T. challenges only the evidence the State presented tending to show that she actually showed her breast or breasts with less than a fully opaque covering on her nipples. C.T. notes that the State did not call the driver of a pickup truck that she claims was in a much better position to see if she exposed her nipples and that Officer Durham's testimony on the point was equivocal. When asked if he saw C.T.'s nipple, however, Officer Durham responded in the positive. Any inconsistencies in

---

1. Ind.Code § 35-45-4-1.5 (2008).

2. C.T. has filed a motion for oral argument, which we deny in an order issued simultaneously with this decision.

Officer Durham's testimony were for the juvenile court to resolve, and it did so in favor of believing that he had seen C.T.'s uncovered nipple. C.T.'s argument is an invitation to reweigh the evidence, one which we decline.

## II. Whether Indiana's Public Nudity Statute Violates the Equal Protection Clause of the Fourteenth Amendment

■ C.T. contends that Indiana's public nudity statute violates the Equal Protection Clause of the Fourteenth Amendment because it criminalizes the public display of female, but not male, nipples. The Fourteenth Amendment provides, in part, that no state "shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).

■ "A gender-based discriminatory classification is subject to an intermediate level of scrutiny." *Hines v. Caston Sch. Corp.,* 651 N.E.2d 330, 335 (Ind.Ct.App. 1995) (citing *S.V. v. Estate of Bellamy,* 579 N.E.2d 144, 146 (Ind.Ct.App.1991)).

To summarize the Court's current directions for cases of official classification based on gender: Focusing on the differential treatment for denial of opportunity for which relief is sought, the reviewing court must determine whether the proffered justification is "exceedingly persuasive." The burden of justification is demanding and it rests entirely on the State. *See Mississippi Univ. for Women,* 458 U.S., at 724, 102 S.Ct., at 3336. The State must show "at least that the [challenged] classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'" *Ibid.* (quoting *Wengler v. Druggists Mut. Ins. Co.,* 446 U.S. 142, 150, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107 (1980)). The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation. And it must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females. *See Weinberger v. Wiesenfeld,* 420 U.S. 636, 643, 648, 95 S.Ct. 1225, 1230–1231, 1233, 43 L.Ed.2d 514 (1975); *Califano v. Goldfarb,* 430 U.S. 199, 223–224, 97 S.Ct. 1021, 1035–1036, 51 L.Ed.2d 270 (1977) (STEVENS, J., concurring in judgment).

The heightened review standard our precedent establishes does not make sex a proscribed classification. Supposed "inherent differences" are no longer accepted as a ground for race or national origin classifications. *See Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). Physical differences between men and women, however, are enduring: "[T]he two sexes are not fungible; a community made up exclusively of one [sex] is different from a community composed of both." *Ballard v. United States,* 329 U.S. 187, 193, 67 S.Ct. 261, 264, 91 L.Ed. 181 (1946).

"Inherent differences" between men and women, we have come to appreciate, remain cause for celebration, but not for denigration of the members of either sex or for artificial constraints on an individual's opportunity.... [Sex] classifications may not be used, as they once were, *see Goesaert [v. Cleary],* 335 U.S. [464,] 467, 69 S.Ct. [198,] 200 [93 L.Ed. 163 (1948)], to create or perpetuate the

legal, social, and economic inferiority of women.

*U.S. v. Virginia,* 518 U.S. 515, 532–34, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). "[N]either federal nor state government acts compatibly with the equal protection principle when a law or official policy denies to women, simply because they are women, full citizenship stature-equal opportunity to aspire, achieve, participate in and contribute to society based on their individual talents and capacities." *Id.* at 532, 116 S.Ct. 2264.

### A. Whether Indiana's Public Nudity Statute Serves Important Governmental Objectives

C.T. opines that the stated justification for public nudity laws involving the display of female nipples often "appears to be the vague notion of public or moral 'sensibilities.'" Appellant's Br. p. 8. The United States Supreme Court, however, has "implicitly accepted that a legislature could legitimately act ... to protect 'the social interest in order and morality.'" *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 61, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) (quoting *Roth v. U.S.,* 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)); *see also U.S. v. Biocic,* 928 F.2d 112, 115–16 (4th Cir.1991) ("The important government interest is the widely recognized one of protecting the moral sensibilities of that substantial segment of society that still does not want to be exposed willy-nilly to public displays of various portions of their fellow citizens' anatomies that traditionally in this society have been regarded as erogenous zones."). In the absence of authority that legislatures can no longer act to preserve order and morality, we conclude that this remains an important governmental objective.

### B. Whether Indiana's Public Nudity Statute is Substantially Related to Important Governmental Regulations

C.T. seems to argue that, even if the State may regulate in the interests of order and morality, the regulation of the display of female nipples is not related to that goal. The crux of C.T.'s argument is her suggestion that there really is no difference between male and female breasts, save for the female breast's lactation capability. The question is not really based on the physical differences between men and women *per se,* but, rather, the societal perceptions stemming from those physical differences. *See City of Tucson v. Wolfe,* 185 Ariz. 563, 917 P.2d 706, 708 (Ariz.Ct. App.1995) ("The ordinance at issue here, however, is not based exclusively on the differences in physical characteristics between men and women, but rather appears rooted in societal norms and perceptions associated with these differences."). We do not believe that it can be seriously disputed (and C.T. does not) that Hoosier society, in general, considers the female breast to be an erogenous zone but does not consider the male breast to be one: public display of the former is almost certain to cause offense and unease while public display of the latter is not. Just as "[t]he Constitution surely does not require a State to pretend that demonstrable differences between men and women do not really exist[,]" *Michael M. v. Superior Ct. of Sonoma County,* 450 U.S. 464, 481, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981) (Stewart, J., concurring), we will not pretend that female and male breasts are thought of in exactly the same way in contemporary Indiana society.

In the end, C.T. would have us declare by judicial fiat that the public display of fully-uncovered female breasts is no different than the public display of male breasts,

when the citizens of Indiana, speaking through their elected representatives, say otherwise. This we will not do. We conclude that Indiana's public nudity statute furthers the goal of protecting the moral sensibilities of that substantial portion of Hoosiers who do not wish to be exposed to erogenous zones in public.

It is also well worth noting that there is no indication that the public nudity statute is in any way invidious. The statute does not seem to disadvantage women in any significant way, and, indeed, C.T. does not claim that it does. The public nudity statute does not demean women or materially affect their "equal opportunity to aspire, achieve, participate in and contribute to society based on their individual talents and capacities." *U.S. v. Virginia*, 518 U.S. 515, 532, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). This is in stark contrast to those cases where an infringement of rights or serious deprivation of opportunities has been the result of a gender-based regulation. *See, e.g., J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (concluding that the Equal Protection Clause prohibits discrimination in jury selection based on gender), *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 733, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (concluding that state university's policy of excluding males on basis of gender violates Equal Protection Clause). Because Indiana's public nudity statute serves the important governmental objective of preserving order and morality and does not disadvantage women in any significant way, we conclude that it does not run afoul of the Equal Protection Clause. In so doing, we join the overwhelming majority of courts who have rejected similar challenges. *See, e.g., Ways v. City of Lincoln*, 331 F.3d 596 (8th Cir.2003); *Buzzetti v. City of New York*, 140 F.3d 134 (2nd Cir.1998); *Biocic*, 928 F.2d at 112

(4th Cir.1991); *Craft v. Hodel*, 683 F.Supp. 289 (D.Mass.1988).

We affirm the judgment of the juvenile court.

DARDEN, J., and BROWN, J., concur.

### ORDER

Appellant, by counsel, has filed a Motion to Publish.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellant's Motion to Publish is GRANTED, and this Court's opinion handed down on September 16, 2010, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

DARDEN, BRADFORD, BROWN, JJ., concur.